## 12282, 12283. STANSALL *v.* COLUMBIAN NATIONAL LIFE INSURANCE COMPANY; and *vice versa.*

1. Not only would this court be bound by the rulings of the Supreme Court on a principle of law as applicable to a certain state of facts under the doctrine of *stare decisis,* but by express provision of the constitution of this State the decisions of that court are made binding upon this court as precedents. In a suit by the same plaintiff on another policy of life insurance covering the same risk, where the issue as to fraud was the same, and the evidence on that issue was for the most part identical and in its effect substantially the same, it was held by the Supreme Court that, "under the evidence introduced, it was for the jury to say whether the repre-

sentations thus made were material to the risk." *Connecticut Mutual Life Insurance Co.* v. *Mulkey*, 142 *Ga.* 358 (82 S. E. 1054). It was therefore error in the instant case for the trial judge to direct a verdict for the defendant, but the issue of fraud should have been submitted to the jury.

2. Under the doctrine known as the "law of the case," the court did not err in striking certain portions of the original plea and certain amendments thereto, since according to the rulings made by this court in *Columbian National Life Insurance Co.* v. *Mulkey*, 13 *Ga. App.* 508 (79 S. E. 482), and 19 *Ga. App.* 247 (91 S. E. 344), the law as to such a defense, so far as this case is concerned, has been fixed and determined by express rulings adverse to defendant; and by them not only the lower court but this court as well is bound.

3. The exclusion of the medical examiner's report, if error at all, was, under the facts of this case, harmless.

DECIDED NOVEMBER 1, 1921.

Action on insurance policy; from city court of Atlanta — Judge Reid. January 22, 1921.

Application for certiorari was denied by the Supreme Court.

The suit as brought in 1913 by Mrs. Mulkey, now Mrs. Stansall, against the defendant insurance company, on a policy dated March 4, 1911, showed on the face of the petition itself that a portion of the premium was covered by two promissory notes which had never been paid, and that the notes provided by their terms that the policy would become null and void upon their nonpayment at maturity. The petition, despite such provision in the premium notes, claimed liability under the policy on two theories, one of which was that the stipulation as contained merely in the note could not cause the policy "to lapse," and, second, that the company by its duly authorized agents had moreover waived any such ground of defense by its acts and conduct subsequent to the maturity of the note which was due. A demurrer to the petition was filed, to the effect that it failed to set forth a cause of action, and upon the overruling of the demurrer the case was brought to this court, and the court held as follows: "The failure to pay a promissory note, taken in payment of an insurance policy (although it is stipulated in the note that the non-payment of the same at maturity will avoid the policy), will not forfeit the policy, where there is no condition in the policy itself providing for its forfeiture for the non-payment of notes. 'When the condition as to forfeiture for non-payment on maturity of a note given for the premium is contained only in the note, the mere fact that the note is not paid at maturity does not of itself avoid the policy.

Such a provision is a condition subsequent, of which the company must avail ·itself by clear and unequivocal acts.' The decision in *Arnold* v. *Empire Insurance Co., 3 Ga. App.* 685 (60 S. E. 470), is controlling. There is no conflict between the decision in that case and the decision of the Supreme Court in *Stephenson* v. *Empire Life Insurance Co.,* 139 *Ga.* 82 (76 S. E. 592). In the *Stephenson* case the ·provision relating to forfeiture for non-payment of premium notes contained in the policy itself; in the *Arnold* case it was in the premium note only; and in the instant case the condition was contained, not in the policy contract, but only . in the note, and is therefore within the ruling in the *Arnold* case. Joyce on Insurance, § 1211; May on Insurance, § 345e." Following this ruling, in form and substance as above set forth, was a brief statement of the pleadings. By the original plea, and by amendments filed November 1, 1913, and December 15, 1914, it was alleged both that the policy sue on was ab initio void, and that it "became null and void," by reason of the nonpayment of the premium note; and by the original plea and by an amendment filed December 3, 1914, the policy was alleged to be void because obtained by fraudulent representations on the part of the insured. After the above decision by this court a verdict was directed for the plaintiff. The case was again brought to this court, and the question as to the necessity of the return of the premium by the company as a prerequisite to its defense was certified to the Supreme Court; and after a decision upon the question by that court (*Columbian National Life Insurance Co.* v. *Mulkey,* 146 *Ga.* 267, 91 S. E. 106), a judgment was rendered by this court (19 *Ga. App.* 247), reversing the judgment of the court below, the 2d and 3d divisions of the syllabus being as follows: "Where suit is brought on an insurance policy which contains a stipulation to the effect that the policy will be void if procured by fraud on the part of the insured, a defense by the insurer that the policy is avoided on account of wilful and material misrepresentation, made by the insured in his application for the policy, is not an attempt to rescind the contract, but an attempt, to have it declared void ab initio. In such a case it is not necessary for the insurer, before pleading that the policy was voided by such misrepresentations, to return the premiums paid or the notes given therefor. The provisions of. section 4305 of the Civil Code of 1910 are not applicable to such

an action, but the law governing it is found in sections 2479, 2480, 2481. In other words, the insurer has a right to retain the premiums already received on the policy, and to avoid the policy because of the fraud practiced upon the insurer by the insured, and to plead such fraud as a defense to the suit. *Columbian National Life Insurance Co.* v. *Mulkey,* 146 *Ga.* 267." "Under the ruling of this court when this case was formerly before us (*Columbian National Life Insurance Co.* v. *Mulkey,* 13 *Ga. App.* 508 (79 S. E. 482), it was not error for the trial court to strike paragraphs 3, 5, 6, and 7 of the original answer, or to strike the whole of the amendment allowed and filed November 1, 1913, or to strike the whole of the amendment allowed and filed December 15, 1914. This court in its previous decision of the case, however, did not pass upon the question ruled upon in the preceding paragraph of this decision; and, under the decision of the Supreme Court in this case (supra), the trial judge erred in striking the paragraphs of the original answer with the exception of those just mentioned, and in striking the amendment allowed and filed December 3, 1914, and in refusing to allow the defendant to sustain by proof the allegations therein made." Subsequently the Supreme Court passed upon another phase of the litigation. *Columbian National Life Insurance Co.* v. *Mulkey,* 150 *Ga.* 45 (102 S. E. 346). On the last trial of the case the defendant sought to amend its plea by again setting up as a ground of defense the provision in the unpaid premium note already referred to, and sought to show that this provision was legal and binding as a part of the insurance contract, so as to forfeit the policy upon its nonpayment at maturity. On motion of plaintiff's counsel, the original pleas, save the defense setting up fraud, together with the amended pleas were stricken; after which, upon the trial of the case, a verdict was directed in favor of the defendant on the issue of fraud. Plaintiff now brings her exceptions to the action of the court in directing a verdict for the defendant, and in excluding from the testimony the medical examiner's report to the company; and the defendant files its cross-bill, excepting to the order of the court in striking the amended defenses referred to.

It appears that the insured in the policy sued on had taken out another policy in the Connecticut Mutual Life Insurance Company, and that the litigation under that policy has been de-

termined. It appears that the issue and the evidence in the instant case and in that case, pertaining to the issue of fraud on account of the alleged false and fraudulent material representations by the insured, were substantially the same, including the documentary evidence, although in the application for the Connecticut Mutual Policy the applicant stated that he used no beer and no alcoholic stimulants, while the application for the policy in the instant case does not go to that full extent, but states that he drank beer, one or two bottles a week, and alcoholic stimulants once or twice a month. The documentary evidence as to the proof of death, occurring about 6 months subsequent to the issuing of the policy, and as to the verdict of the coroner's inquest that the insured had died of acute alcoholism, was the same in both cases; likewise the extracts from the testimony of the insured taken from his examination in bankruptcy in September, 1911. Pursuant to a stipulation between counsel in the trial of the instant case, the defendant read the depositions of one witness taken in the other case, and read the stenographic report of the evidence delivered on that trial by seven additional witnesses. Pursuant to this stipulation the plaintiff read in evidence the testimony of nine of her witnesses as delivered in the trial of the other case; also the evidence of one of the defendant's witnesses in the other case. Dr. J. H. Conway was a witness for the defendant on both trials, and his evidence was substantially the same on both. The evidence of the respective medical directors of the defendant companies was similar in the two cases. J. M. Davis testified for the plaintiff to like effect in both cases. Except as above indicated, there was only one witness for the defendant, and only one witness for the plaintiff, who did not testify in the other trial, but their evidence does not materially alter the state of the case as proved; the evidence for the plaintiff in the instant case is almost the same, and is fully as strong, as in the former case; and the evidence for the defendant is almost identical, and substantially the same in effect as offered in the trial of the previous case. Upon a question subsequently certified by this court to the Supreme Court in another case that court held: "A contract of life insurance, as expressed in the policy issued by a company to an individual, may be supplemented by a subsequent contract between the parties, expressed in a promissory note given by the insured to the insurer for a

premium on the policy and providing for a termination of all rights under the policy for non-payment of the note, although the policy contain no such provision." *State Life Insurance Co. v. Tyler,* 147 *Ga.* 287 (93 S. E. 415).

*Horton Brothers, Anderson, Rountree & Crenshaw,* for plaintiff.

*Colquitt & Conyers,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) The ruling in the first headnote, when taken in connection with the above statement of facts, does not seem to require further elaboration. Something additional may properly be said in regard to the rulings in the 2d and 3d headnotes. It is the contention of learned counsel for the insurance company that neither of the rulings made by this court in *Columbian National Life Insurance Co.* v. *Mulkey,* 13 *Ga. App.* 508, and 19 *Ga. App.* 247, can properly be taken as the law of this case, so as to exclude the defense made by virtue of the stipulation contained in the premium notes, for the reason that the ruling on the demurrer as made in 13 *Ga. App.* 508, " went no further than the judgment of the trial court, which was that a declaration setting up all the waivers and facts heretofore enumerated could withstand a general demurrer to the petition." In other words, the contention is, as we understand it, that, since the petition might have been held to be good by virtue of the saving allegations therein contained with reference to a waiver by the company of its defense growing out of the stipulation contained in the premium notes, neither the trial court nor this court can be taken to have gone further in its ruling than to hold that the petition as brought was good in law; and consequently that this, as the only ruling, is all that has become settled as " the law of the case," to the exclusion of what might have been given by this court merely as reasons for its decision. If the proposition should be accepted as sound, that this court in ruling upon questions of law is limited in its power to fix and determine the law of the case by the scope and necessary legal effect of the judgment rendered in the trial court, then the contention as now made might be correct, since it has been held that a judgment by a trial judge on a demurrer does not conclude a party upon any question not *necessarily* involved in such a demurrer. *McElmurray* v. *Blodgett,* 120 *Ga.* 9 (3) (47 S. E. 531) ; *Ga. Northern Ry. Co.* v.

*Hutchins,* 119 *Ga.* 504 (1, 2), 510 (46 S. E. 659) ; *Atlanta Post Co.* v. *McHenry,* 26 *Ga. App.* 341 (106 S. E. 324). But, while we agree with counsel that a decision or ruling by this court such as shall constitute the " law of the case " does not consist in the line of reasoning or arguments set forth in the opinion, we do think that it includes each and every applicable proposition of law actually applied to the facts or pleadings involved (*Heidt v.* Minor, 113 Cal. 385, 45 Pac. 700, 701) ; and that a rule when thus announced, so far as it relates to the case in which it was rendered, is binding alike upon the trial court and the court rendering it, in all subsequent proceedings therein. As we understand it, not only the judgment rendered by the appellate court, but all applicable rules of law actually applied in the decision, become the law of the case. Continental Life Insurance Co. *v.* Houser, 111 Ind. 266, 268 (12 N. E. 479). While it is true that a judgment by an appellate court does not become the law of the case upon any proposition not expressly or impliedly applied by it in the decision, yet where a proposition of law is plainly stated and applied to its decision, the rule thus applied becomes the law of that particular case in all subsequent proceedings therein, and that to such an extent that the appellate court itself is powerless to depart therefrom.

Thus, the proposition of law as stated by this court and applied to this case in 13 *Ga. App.* 508, binds not only the trial court, but this court as well. It was there held that " the failure to pay a promissory note, taken in payment of an insurance policy (although it is stipulated in the note that the non-payment of the same at maturity will avoid the policy), will not forfeit the policy, where there is no condition in the policy itself providing for its forfeiture for the non-payment of notes." The petition had admitted the non-payment of the premium notes containing such a stipulation. The demurrer raised the question of law. In passing thereon the court specifically planted its decision on its statement of the legal rule, and the rule as thus stated and applied became the law of the case. Under the ruling as made, the question as to whether, under the allegations of the petition, the company had by the conduct of its agents waived such a ground of defense became moot, as it were, since that question became merged into and was comprehended by the more far reaching and controlling prop-

osition actually applied. A right which did not exist need not and could not be waived. The court in its subsequent decision in 19 *Ga. App.* 247, itself treated this question of law as adjudicated. The action of the trial judge in striking the original and amended portions of the plea, which pertain to this matter of defense, was following not only the original ruling, but the subsequent one as well, the latter of which was itself based upon this doctrine known as " the law of the case." It appears that when the case was here last these pleas had not, as was then supposed, been actually stricken; but the subsequent action in striking them is in accord with both of the decisions of this court. So far as the ruling in 19 *Ga. App.* 247, which relates not to the demurrer to the petition but to the pleas as amended, is concerned, counsel seek to draw a distinction, such as might prevent the application of the latter case under the doctrine of the law of the case. The point is that up to the time of the holding in 19 *Ga. App.* 247, the plea had sought to set up that the policy was void ab initio, whereas the recent amendment offered at the time of the last trial sought to show that the policy lapsed or became forfeited upon the non-payment of the premium note. As already intimated, this contention is not urged with reference to the decision in 13 *Ga. App.,* since that decision was upon the overruling of the defendant's demurrer to the petition, and both the petition and the decision clearly had reference to a lapse or forfeiture. But even as to the point made with reference to the later decision, it would seem that the original plea, and certainly the plea filed December 15, 1914, sought to set up as a defense the lapse or forfeiture of the policy by reason of the non-payment of the premium note on its maturity. In the original plea and answer it is set up, not only that the policy was void ab initio by reason of the nonpayment of the premium note, but " became, was, and is null and void by reason of the failure to pay the first premium thereon," and that " by the failure of the said William M. Mulkey to pay the notes, both the notes and the policy *became* null and void and of no force and effect whatsoever." In the amendment to the previous plea, filed December 15, 1914, it is stated that by reason of the provision in the premium notes, the policy of insurance " *lapsed and became* null and void by the failure to pay the second of said notes at its maturity;" and that after receiving notice of such non-payment it took action

upon said notes "by cancelling and entering cancelled said notes, and by *lapsing and entering as lapsed said policy."* This latter amendment, as well as the paragraphs in the earlier pleas containing the averments quoted, was specifically referred to in the opinion in 19 *Ga. App.* 247 (3), 248.

The only other question involved relates to the exclusion of the special report to the defendant of the physician who examined the insured; which report appears to have been printed and written on the same pages as Part II of the application, and which was signed by the medical examiner, but not by the applicant. This physician testified orally for the plaintiff in the trial; and the court in excluding the report as independent evidence of itself ruled that it was admissible "as a memorandum which the witness used." Plaintiff contends that it was admissible because it "is a part of the application written and printed on the same sheet, and it is likewise a part of the contract of insurance," that "this report was before the company when the application for insurance was considered, and it thus acquired direct knowledge and notice of every statement in the application," and that the knowledge of the medical examiner "will be imputed to the company." Since an examination of the report discloses nothing whatever to indicate any knowledge on the part of the examiner as to any fact conflicting with the statements made by the insured, and since it fails to disclose any statements from which any such knowledge might be deduced, the exclusion of such report was necessarily harmless to the defendant, as showing either actual or imputed knowledge by the company relating to the previous use of alcoholic stimulants by the insured. Thus, since the report could not have any probative value upon the sole issue to be determined, its exclusion could not in any event have been harmful to the defendant; and it therefore becomes unnecessary to determine whether or not it in fact constituted a part of the contract of insurance and for that reason was admissible. Moreover, it appears that the examiner, as a witness for the plaintiff, testified to substantially everything treated in that report, and, while so testifying, was permitted, under the ruling of the court, to use the report as a memorandum to refresh his recollection; and by the ruling of the court the report was declared admissible for such purpose.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. Stephens and Hill, JJ., concur.*