PITTMAN *v.* INGRAM.

No. 11766.   MARCH 15, 1937.   ADHERED TO ON REHEARING, MARCH 27, 1937.

*Wright & Covington, Maddox, Matthews & Owens, R. C. Pitt-man, Paul F. Akin, Neel & Ault, W. T. Townsend,* and *Finley & Henson,* for plaintiff in error.

*Morris & Welsch, John S. Wood, Herschel Parham,* and *J. B. White,* contra.

ATKINSON, Justice.   The constitution of this State contains the following:   "There shall be a judge of the superior courts for each judicial circuit, whose term of office shall be four years, and until his successor is qualified." Art. 6, sec. 3, par. 1   (Code, § 2-3101). "The successors to the present and subsequent incumbents shall be elected by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms." Art. 6, sec. 3, par. 2 (§ 2-3102).   "The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections. Every vacancy occasioned by death, resignation, or other causes shall be filled by appointment of the Governor until the first day of January after the general election held next after the ex-

piration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." Art. 6, sec. 3, par. 3 (§ 2-3103). These provisions of the constitution are fundamental and controlling. They rank above all legislative or executive powers in relation to the subject to which they refer. They constitute the entire provisions of the constitution as to selection and tenure of office of judges of the superior courts. Formerly the judges were elected by the legislature, under art. 6, sec. 12, par. 1, of the constitution of 1877. McElreath on the Constitution, 380. This provision was so changed by adoption of an amendment proposed by act of the legislature (Ga. L. 1897, p. 16) as to make the judges elective by qualified voters, as stated above. The constitution as thus amended has not been changed. The constitutional design to fill the offices of judges of the superior courts by vote of the qualified electors must be carried in mind. It is distinctive from executive function, and manifests a policy to select the judges by the electorate. This object should also be borne in mind. When a person has been elected judge for a full term and has qualified by taking the oath and receiving his commission, he becomes judge *"whose term of office* shall be four years, *and until his successor is qualified."* By these plain words the term of the electorate's choice for judge continues during the prescribed four years and thereafter "until his successor is qualified." This tenure of office is beyond the reach of the executive department of government, and can not be interrupted by the Governor while it endures. This provision of the constitution can not be taken out by mere legislative act or by construction; nor can it be obviated by executive order. It must be given effect. If during such term of a judge in commission a vacancy occurs "by death, resignation, or otherwise" the vacancy "shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." This power of executive appointment is for an emergency, and can be exercised only in case of a vacancy. It can not be exercised to be effective while a duly commissioned incumbent is in office.

It has been said: "The office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with

an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it," and "the mere expiration of the term of the incumbent does not create a vacancy." *Shackelford* v. *West*, 138 *Ga.* 159 (74 S. E. 1079). See *Gormley* v. *Taylor*, 44 *Ga.* 76. It was said in another case: "All officers of this State must discharge the duties of their office until their successors are commissioned and qualified. Civil Code (1910), § 261. Where the legislature creates an office and provides for the election of an officer to fill it for a given term of years, the incumbent will hold over and beyond the fixed term until his successor is elected, qualified, and commissioned. *Walker* v. *Ferrill*, 58 *Ga.* 512; *Smith* v. *Meador*, 74 *Ga.* 416 (58 Am. R. 438); *Roby* v. *State*, 74 *Ga.* 812. The office does not expire at the expiration of said term, but the elected officer holds over until his successor is commissioned and qualified. Holding over prevents vacancy." *Stephenson* v. *Powell*, 169 *Ga.* 406 (150 S. E. 641). In another case it was said: "Applying to the pleadings and the evidence the constitution and laws declaring that the term of office of the ordinary of a county shall be four years and until his successor is elected and qualified, the petitioner was entitled to the office, holding over under his prior commission, and the office was not vacant." *Lee* v. *Byrd*, 169 *Ga.* 622 (151 S. E. 28). And it was said by Chief Justice Russell, speaking for the court: "The question then arises whether use of the word 'otherwise' in section 15, in the clause 'in case of a vacancy by death or resignation or otherwise,' necessarily includes a vacancy caused by a failure on the part of one selected as a commissioner to qualify, thereby causing a conflict between the provisions of section 3 to which we have referred, or whether there is no necessary conflict between section 3 and section 15. The use of the words 'a vacancy by death or resignation or otherwise' would seem to be a classification of vacancies which might arise after qualification, because it will not do to say that the word 'otherwise' would be useless unless it was intended to include every vacancy, no matter what cause may have occasioned the vacancy. A vacancy might be caused after the commissioner had qualified, by removal from the county or the State or by conviction of a felony, or removal from office for any sufficient cause provided by law. Therefore it can not be implied from the use of the word 'otherwise' that the word

'vacancy' as used in section 15 was intended to include all vacancies, so as to exclude vacancies which might not be ejusdem generis with 'death' or 'resignation.' In a generic sense the word 'vacancy' as applied to official positions means an absence of any one to hold the office and discharge its duties. . . The vacancy referred to in section 15, caused 'by death or resignation or otherwise,' naturally refers only to those who have qualified after being elected, and not to the two classes, in one of which there was no election, and the other in which there was a failure to qualify after the officer had been elected." *Cason* v. *Harn*, 161 *Ga.* 366 (131 S. E. 88). Under 'the foregoing authorities, and especially the decisions in *Gormley* v. *Taylor*, and *Shackelford* v. *West*, supra, the word "successor" in the phrase "until his successor is qualified" must be construed to mean a successor chosen according to "the regular method;" and at the present time the regular method of selecting judges of the superior court is election by the people.

In the instant case Judge Pittman was the duly commissioned incumbent whose term would extend to January 1, 1937, "and until his successor qualified." In the general election held in November, 1936, James A. McFarland was duly elected to succeed Judge Pittman, but died before January 1, without having qualified by taking the oath and receiving a commission. After his death the Governor, on January 4 while Judge Pittman was occupying and performing the duties of the office, by executive order declared a vacancy to exist, and appointed William A. Ingram as his successor. In these circumstances the election of James A. McFarland was ineffective by reason of his death before he qualified by taking the oath of office and receiving a commission. He never became judge. The fact of his election did not cause a vacancy in the term of Judge Pittman. The appointment of Judge Ingram by the Governor when there was no vacancy was unauthorized. Under the pleadings, in which there was no issue of fact, the judge erred in overruling the demurrer to the petition for quo warranto, and in granting the writ ousting the respondent from the office.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent.*

RUSSELL, Chief Justice, dissenting. I can not concur in the statement of facts as appears in the headnote of the majority

opinion. The statement of facts very plainly weaves into it matters of judicial decision which are to control the judgment to be rendered by the court. The case before us is an information in the nature of quo warranto, brought by William A. Ingram against Claude C. Pittman. Necessarily, as neither of these individuals recognizes the claims of the other, they appear in this litigation as mere individuals. It appears from the record that James A. McFarland was elected on November 3, 1936, as judge of the Cherokee Circuit, in an election in which Pittman was not even a candidate. On January 4, 1937, Governor Talmadge appointed Mr. Ingram to fill the vacancy caused by the death of McFarland on November 25, 1936. When Mr. Ingram demanded possession of the court-room, Mr. Pittman, having determined to hold the office to which Mr. McFarland had been elected, refused to be ejected as had been demanded by Ingram. The statement of facts in the headnote of the majority, to the effect that Mr. Ingram "presented his credentials to Judge Pittman, who declined to recognize the credentials or surrender the office," contains a powerful negative pregnant adverse to Ingram, in that it assumes that "Judge Pittman" is judge, and therefore that there is no vacancy to be filled, and that Ingram is at best nothing more than an interloper, subject to fine as for contempt of court. I concur, of course, in the opinion of the majority that provisions of the constitution are fundamental and controlling. "They rank above all legislative or executive powers in relation to the subject to which they refer." In my opinion, it can not be denied that the death of Mr. McFarland created a vacancy in the office to which he had been elected, for the term beginning January 1, 1937. As to this, art. 6, sec. 3, par. 3, of the constitution of this State declares that *"Every vacancy occasioned by death, resignation, or other causes shall be filled by appointments of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected."* Can it be said that the respondent is a successor of McFarland? Can it be said that as a holdover he is only the successor of himself?

In McElreath on the Constitution, § 1080, it is said: "By an amendment proposed in an act approved on the 6th day of Decem-

260

ber, 1895, and ratified at an election held on the 7th day of October, 1896, art. 6, sec. 2, was amended by adding a new paragraph thereto, to be known as paragraph 8, said paragraph to read as follows: 'The Supreme Court shall hereafter consist of the Chief Justice and five associate Justices. The Chief Justice and the associate Justices of the Supreme Court shall hereafter be elected by the people at the same time and in the same manner as the Governor and the State-house officers are elected, except that the first election under this amendment shall be held on the third Wednesday in December, 1896, at which time one associate Justice shall be elected for a full term of six years, to fill the vacancy occurring on January 1st, 1897, by the expiration of the term of one of the present incumbents, and three additional associate Justices shall be elected for terms expiring respectively January 1st, 1899, January 1st, 1901, and January 1st, 1903. The persons elected as additional associate Justices shall, among themselves, determine by lot which of the three last-mentioned terms each shall have, and they shall be commissioned accordingly. After said first election, all terms (except unexpired terms) shall be for six years each. In case of any vacancy which causes an unexpired term, the same shall be filled by executive appointment, and the person appointed by the Governor shall hold his office until the next regular election, and until his successor for the balance of the unexpired term shall have been elected and qualified.'" This quotation, in the concluding sentence relating to vacancies, conforms to my opinion upon the subject, and determines that the person who is to fill the vacancy, if one should ever be held to exist, "shall hold his office until the next regular election, and until his successor for the balance of the unexpired term shall have been elected and qualified." For this reason I can not concur in the concurring opinions of two of my much beloved associates, one of whom believes it a doubtful question whether the respondent in this case is to hold over "for the balance of the unexpired term," and the other of whom deems it improper to express any opinion as to when or how a vacancy may ever occur.

After as critical consideration of the record and the assignments of error in the bill of exceptions as I am capable of making, I have reached the conclusion that the judgment of the learned judge in favor of the relator in the quo warranto proceeding, and

ousting respondent, should be affirmed. The issue is entirely one of law. Pertinent facts by which the issues are to be determined are substantially not in dispute. It is admitted that respondent at the time of the election of his successor was the incumbent of the office of judge of the Cherokee Circuit. It is not denied that before the expiration of the term for which he was elected there was an election in which J. A. McFarland was, at the legal election of November 3, 1936, elected judge of said circuit. It does not appear that in the general election referred to he even had any opposition for the position. He was entitled, in virtue of that election, to have applied for a commission for a term commencing January 1, 1937, and running for only four years. Mr. McFarland did not apply for a commission or qualify, but died on November 25, 1936. The plaintiff in error contends that in the circumstances he is entitled to hold over and continue to be judge of the Cherokee Circuit. When the relator, Ingram, presented a commission from the Governor, the respondent refused to surrender his position. It appears from the record that at the time that Ingram was appointed and qualified and the commission was given him, his Excellency, Eugene Talmadge, was Governor of the State, and authorized to fill the office if a vacancy in fact existed. For this reason our decision must hinge upon the single question, did a vacancy exist, or was there no vacancy resultant upon the expiration of the term of Judge Pittman? The constitution, art. 6, sec. 3, par. 3, declares: "The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections. Every vacancy occasioned by death, resignation, or other causes shall be filled by appointments of the Governor until the first day of January after' the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." Code, § 2-3103. This provision clearly points out that where a vacancy occurs, it lasts no longer, even if there be an appointment by the Governor, than until the first day of January after the next general election. Inasmuch as our general elections are held every two years, there can be no such thing as the incumbent of an office holding on for any longer than the term fixed by the constitution, which would only be two years. Therefore there can not be such a thing as a

holdover for the full term, of such nature as is mentioned in numerous cases cited by counsel for plaintiff in error. The case of *Shackelford* v. *West*, 138 *Ga.* 159, relied on by the respondent, differs on its facts from the case at bar. In that case the office of judge of the city court of Athens was not elected by the people, and had never been. West was appointed by the Governor, and Shackelford, who was commissioned by Governor Smith, was appointed by Governor Smith. The case now before this court relates to the filling of vacancies in offices which under the constitution are elected by the people in the first instance. A vacancy occurs when there is the absence of any person qualified to hold office, and the respondent says that he was qualified to fill this office, which statement alone would create a vacancy and defeat his claim as a holdover. If the respondent in this case is entitled to the office, whom does he succeed? If he has a right to succeed himself, it must be by the claim as a holdover, which as we have pointed out is a claim without merit. If he is entitled to the office as a successor to come within the wording of the constitution, the question naturally arises, of whom is he the successor? Is he a successor of McFarland, the person who was elected without opposition in November, 1936? He can not be, for McFarland never qualified. He never was de jure judge of the Cherokee Circuit. He can not be successor of himself, as a holdover, nor can he be his successor in face of the fact that he claims to be a holdover. This court had under consideration the definition of the word "vacancy," and the court unanimously defined "A vacancy, as that term is used in connection with official positions, implies the absence of any holder of the office. An office may be said to be vacant when it is not held by one legally entitled to discharge the functions and duties of the particular officer invested therewith. There may be three classes of vacancies: (1) A vacancy caused by a failure to elect or to hold an election. [And it can be well said, as long as McFarland though elected died before qualifying, the circumstances are tantamount to a failure to have had an election.] (2) A vacancy caused by the failure of one appointed or elected to an office to qualify as provided by law [which does not alter but rather conforms to the first reason]. (3) A vacancy caused by either death, resignation, or removal after the certain officer has been elected or appointed and may also have qualified."

*Cason* v. *Harn*, 161 *Ga.* 366 (supra). I am of the opinion that so much record, argument, and citations as are referred to in the brief for the plaintiff in error, as to statutory provisions relative to vacancies in office, are not applicable in the present case, for the reason that the constitutional provision upon the subject properly controls the conclusion reached by the trial judge; for art. 5, sec. 1, par. 14, of the constitution provides that "When any office shall become vacant, by death, resignation, or otherwise, the Governor shall have power to fill such vacancy, unless otherwise provided by law; and persons *so appointed* shall continue in office until a successor is commissioned, agreeably to the mode pointed out by this constitution, or by law in pursuance thereof." Code, § 2-2614. The latter clause of this provision of the constitution can have no application to this case, because it is a provision as to who shall continue in office, and it provides that persons so appointed shall continue in office until a successor is commissioned, etc., and, as appears from the record, the respondent did not derive his office originally from an executive appointment, but was elected by the people in 1932 for a term of four years and until a successor was appointed and qualified. There was no unexpired term of McFarland, who had been elected in the general election on November 3, 1936, and Pittman's term expired by constitutional limitation on January 1, 1937. The framers of the constitution construed all of the provisions of that instrument together, as so clearly stated in the unanimous opinion of this court in *Wellborn* v. *Estes*, 70 *Ga.* 390. The members of the constitutional convention of 1877 never for a moment contemplated that the amendment which the people demanded in 1896, giving the election of their judges to the people, would be subverted, overthrown, and undermined by proceedings to install a holdover such as is suggested by the judgment of the majority. The only change effected by the amendment submitted by the legislature to the people in 1897, and adopted in 1898, was to extend the popular electorate to judges of the superior court, and to make more clear the verbiage of article 6, section 3, paragraph 3, of the constitution, which declares that every vacancy occasioned by death, resignation, or other cause shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such

vacancy occurs (in this case the general election of November, 1938), at which election a successor for the unexpired term shall be elected. Mr. Justice Hutcheson concurs in this dissent.

ON MOTION FOR REHEARING.

BELL, Justice, concurring. The writer agrees to what has been said in the prevailing opinion, and does not desire to say more, except in response to the suggestion that the decision should go further and define the extent of the tenure under the clause "until his successor is qualified" and determine when or at what election a judge of the Cherokee Circuit may be chosen by the electorate. Apparently the movant and the respondent each would invoke such additional adjudication. The suggestion has been declined, and this statement relates solely to that conclusion. The writer would not hesitate to go further in this case, if it were proper to do so under the record, and while he is speaking for himself only, it may be safely assumed that no other is of a different attitude. Naturally it would be desirable to the parties in this case, as well as to the public, to have a decision at this time that would quiet the title to this office and avoid further controversy. This court, however, can only decide such questions as are presented by the record in a case before it and must confine itself to the consideration of errors alleged to have been committed by the court below in such case. *Dunaway* v. *Gore*, 164 *Ga.* 219, 230 (138 S. E. 213). The only question involved by the instant record was whether the death of the judge-elect before his qualification created a vacancy authorizing an appointment by the Governor, and a decision upon other questions would be obiter and not binding. Moreover, such a decision would be in effect a declaratory judgment which this court has no jurisdiction to render. *Southern Railway Co.* v. *State*, 116 *Ga.* 276 (2) (42 S. E. 508). The issue in the present case is not based upon any election, and a decision should and could not be made at this time in regard to a future election. Furthermore, the parties to this case are Pittman and Ingram, while if a new case should ever arise the parties may be different. If and when an election is held, any claim based thereon would make an entirely new and distinct case, and the parties thereto, whoever they may be, will be entitled to a decision upon the facts as then presented. Under every principle of justice, as well as jurisdiction, such a case ought not to be

prejudged, and the more especially is this true since the parties may be different. For the reasons stated, the court is right in declining to enlarge its decision so as to cover the questions referred to in this statement.

JENKINS, Justice, concurring specially. When the opinion in this case was originally handed down, I agreed to the conclusion arrived at by Justice Atkinson, but stated in a special concurrence then filed that in my opinion, since the court was holding that the incumbent was not subject to ouster, for the reason that he held a right to the office, it ought to be stated just what this right was which the court was adjudicating to be valid. In a motion for rehearing by the appointee, as well as in the response thereto filed by the incumbent, it is urged that the tenure of the incumbent be defined. In view of the special concurrence now presented by Justice Bell, dealing with this phase of the case, I have withdrawn my former special concurrence, and present this in lieu thereof, in order that reference may be made to the cases cited by Justice Bell. In order to make my position clear on this point, some slight reference to the merits of the case as a whole seems necessary. As stated in my former special concurrence, the controlling question is whether or not a vacancy in the office of judge existed at the time the appointment by the Governor was made. If a vacancy existed, the appointment was valid. If a vacancy did not exist, an appointment was unauthorized. It seems necessarily to follow that the controlling question is therefore further limited to a determination of the question as to whether McFarland was judge at the time of his death. If he was, his death created a vacancy. If not, it could not do so. The purpose of the election which was held was not to create or declare a vacancy after January first, but to determine who, after that date, the occupant of the office would be. The people selected McFarland. He was judge-elect. Had he qualified and lived until January first, he would have been judge. Having done neither, but having died while Pittman was judge, the death of McFarland did not create a "vacancy," but rendered the election altogether abortive, just as if no election had been held. In such a case, under the terms of the constitution, the incumbent would hold over, but only "until his successor is qualified." It does not matter, so far as I can see, whether any such contingent additional tenure be designated

as a part of his "term," or whether such additional tenure be taken as separate from and in addition to the regular four-year term. In neither case could it be said that a *vacancy* existed. Under our decisions, a vacancy exists only when there is no one who is authorized to perform the duties of the office, as when the incumbent dies or resigns. Since the power of appointment rests wholly upon the existence of a vacancy, and since no vacancy existed, the appointment must fail. This has been fully and better stated in the majority opinion prepared by Justice Atkinson. The reason for this slight reference to the principle governing the judgment is to show that it is necessarily planted upon an adjudication by this court of the incumbent's superior title to the office. Each of the contestants claims under the provisions of the constitution.

In thus holding in favor of one of the contestants, would it be obiter to define just what it is that we have adjudicated to be his? As I see it, in planting the decision on the ground that Pittman can not be ousted by reason of his superior title to the office, it would be altogether proper, as a legitimate part of the ruling, to define just what the title is which we uphold. While it is true that the controlling question presented by the record is whether a vacancy existed, the *answer* to this question necessarily depends upon whether Pittman is still invested with a tenure. It would seem that the proper way to hold that he is so invested would be to say just what this tenure consists of. In doing so, the court would not be indulging in obiter dicta. If defining the incumbent's present tenure meant merely to acquaint Ingram or somebody else with what his or their rights might be in a new and different proceeding under new and different facts, then and in such event to do so would be to render a judgment which under the Scotch laws was designated as "declaratory." That form of judgment or action, as is set forth in *Southern Ry. Co.* v. *State*, 116 *Ga.* 276 (2) (supra), is unknown to our jurisprudence. As I see it, however, Ingram is entitled to know what rules and the effect of such rules, *as applied in this case,* establish the tenure of the person whom *he* as the appointee seeks to oust. To so apply the law would constitute an integral part of the ruling made in this case, so as to constitute the law of this case. It would seem that the law and the ruling in this particular case is not fully laid

down until something else is said other than that the incumbent is entitled to some vague and undetermined tenure, which in some undisclosed way operates to defeat the relator's claim, but which the court refuses to express or define. The gist of the relator's proceeding is that Pittman has no title or tenure in the office. Respondent defends by claiming title. The answer is, *what* title, if any title, the respondent has. It is true, as stated by Justice Bell in his special concurring opinion, that "it would be desirable to the parties in this case, as well as to the public, to have a decision at this time that would quiet the title to this office and avoid further controversy." This fact alone would not, however, be sufficient to authorize this court to meddle in questions not presented by the record. My position is that the tenure of the incumbent *is* the one controlling question presented by the record. To my mind, whether the claim of the respondent is *capable* of being defined is the one and only difficult question presented in this case. Whether it *can* be defined throws powerful light on whether such right exists. A right which is too vague or uncertain to define is a right which does not exist. It follows that, in determining whether such a tenure does exist, it ought, as a part of the ruling, to be defined.

My views upon the question that we are now dealing with were expressed in *Stansall* v. *Columbian National Life Ins. Co.*, 27 *Ga. App.* 537, 543 (109 S. E. 297), in which the court said: "While we agree with counsel that a decision or ruling by this court such as shall constitute the 'law of the case' does not consist in the line of reasoning or arguments set forth in the opinion, we *do* think that it includes each and every applicable proposition of law actually applied to the facts or pleadings involved (Heidt *v.* Minor, 113 Cal. 385, 45 Pac. 700) ; and that a rule when thus announced, so far as it relates to the case in which it was rendered, is binding alike upon the trial court and the court rendering it, in all subsequent proceedings therein. As we understand it, not only the judgment rendered by the appellate court, but all applicable rules of law actually applied in the decision, become the law of the case. Continental Life Insurance Co. *v.* Houser, 111 Ind. 266, 268 (12 N. E. 479). While it is true that a judgment by an appellate court does not become the law of the case upon any proposition not expressly or impliedly *applied* by it in the decision, yet where

a proposition of law is plainly stated and applied to its decision, the rule thus applied becomes the law of that particular case in all subsequent proceedings therein, and that to such an extent that the appellate court itself is powerless to depart therefrom." Justice Bell in his special concurrence, assigning as a reason for not defining the tenure which the court has upheld, says: "The parties to this case are Pittman and Ingram, while if a new case should ever arise the parties may be different. If and when an election is held, any claim based thereon would make an entirely new and distinct case, and the parties thereto, whoever they may be, will be entitled to a decision upon the facts as then presented." It would not seem that, because some other case between other and different parties might involve the question of Pittman's tenure, this would afford a sound reason why the vital question of tenure between Pittman and Ingram as now presented can not and should not be adjudicated. A decision of the question would determine the "law of the case" only as between the present litigants. It would not be binding as the "law of the case" upon any other person in any other case. Any rule of law actually applied in this case would, as to other parties, have the same force and effect as any other precedent established by this court. Every ruling in every case may thus affect the rights of future litigants, but this fact does not constitute a valid reason for declining to fully decide every case as and when presented.

It is my opinion that this court not only can but should define the incumbent's tenure, which it has upheld against the claim of the relator Ingram, by expressly saying when, under this decision, an election by the people to fill the office can be held, whether in June, 1937, in November, 1938, in June, 1939, or in November, 1940.