HOOPER *v.* ALMAND.

No. 14520.   MAY 8, 1943.

*Hatton Lovejoy* and *Edgar Watkins,* for plaintiff.

*James A. Branch, Thomas B. Branch Jr., W. D. Thomson, John L. Tye Jr., William Schley Howard, E. L. Tiller,* and *B. D. Murphy,* for defendant.

GRICE, Justice. The record presents but one question, and that is whether the relator or the respondent has title to the office involved. A determination of the issue involves two inquiries: (a) Did the tenure of office of Judge Almand end on December 31, 1942, provided a successor was lawfully elected at the general election in November, 1942, or does the tenure of office of respondent extend to December 31, 1944? (b) If respondent's tenure of office ended on December 31, 1942, or should have ended on that date, provided a successor had been lawfully chosen, was the relator, Hooper, lawfully chosen to succeed him?

The facts agreed upon, a full report of which appears in the preceding statement, will not be repeated, except that, for the purpose of focusing attention upon what are considered salient and controlling points in this controversy, a brief reference will be made to some portions thereof.

Honorable John D. Humphries was, in the Democratic primary held on September 9, 1942, nominated as a candidate for judge of the superior court of the Atlanta Judicial Circuit to succeed himself, and at the Democratic State Convention held October 7, 1942, he was designated as the nominee of the party for said office. Judge Humphries died on October 22, 1942. The term for which he had been elected began on January 1, 1939. The general election was held on November 3, 1942. On October 24, 1942, the Governor appointed respondent judge of the superior court of the Atlanta Circuit, his commission reading, "This commission shall continue in force from October 24, 1942, to January 1, 1945, and until your successor is elected and qualified, unless the same shall be vacated sooner or annulled in the manner authorized by the constitution and laws of this State."

At the general election of November 3, 1942, Mr. Hooper, ac-

cording to the returns as certified to the Governor by the Secretary of State, received 43,533 votes; for the deceased judge, Honorable John D. Humphries, 17,554 votes were cast, and on 47 ballots the name of Bond Almand, who was not a candidate, was written. Mr. Hooper, having applied for and being refused a commission by the Governor, took and subscribed before a clerk of the superior court the usual oath, and on January 1, 1943, made demand on the respondent that he vacate the office in favor of relator. This was declined, and the present proceeding was instituted.

It is the insistence of counsel for Judge Almand that since Judge Humphries' death occurred within less than thirty days of the general election in 1942, the appointment ran until January 1, 1945. It is the position of counsel for Mr. Hooper that the only appointment the Governor could make was one for the remainder of the unexpired term of Judge Humphries, and that the tenure of office of one so appointed could not extend beyond that, when one chosen and qualified for the term commencing January 1, 1943, had been elected at the general election in November, 1942. These respective contentions necessitate a consideration of section 3 of article 6 of the constitution of this State. Paragraph 1 thereof (Code, § 2-3101) provides that there shall be at least one judge of the superior courts for each judicial circuit, "whose term of office shall be four years, and until his successor is qualified." The clause quoted above was a part of the original constitution as it was adopted in 1877. On October 5, 1898, a proposed amendment was ratified, changing the manner of selecting judges. The requirement, now embodied in paragraph 2 of the section referred to (Code, § 2-3102), reads as follows: "The successors to the present and subsequent incumbents shall be elected by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms: Provided, that the successors for all incumbents whose terms expire on or before the first day of January, 1899, shall be elected by the General Assembly at its session for 1898, for the full term of four years." The words "next preceding the expiration of their respective terms" are obliged to refer to the four years for which the judges are elected, and not to an election next preceding the expiration of the four years plus an indefinite period which would run until their successors were

qualified. The terms referred to here mean the four-year terms. To give the phrase any other rendition would be to hold that the constitution has fixed no definite time for the election of judges for full terms. Judge Humphries being an incumbent, elected for a term beginning January 1, 1939, and ending December 31, 1942, and until his successor was qualified, the time to elect his successor was by virtue of this paragraph of the constitution at the general election in November, 1942, for that was the general election next preceding December 31, 1942. Having declared in effect that a successor to Judge Humphries should be elected in November, 1942, the same amendment, in what is paragraph 3 of the section (Code, § 2-3103) in definite words states that "The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections." The relator does not seek to fill any part of the term of Judge Humphries made vacant by his death, nor was he elected to fill any such vacancy. He claims to have been elected under the Code section first above referred to, at the general election next preceding the expiration of Judge Humphries' term, and that accordingly, under the section last referred to, his term began on January 1st thereafter. Since he was not elected to fill any vacancy, the clause quoted, so far as it affects him, might omit the words, "except to fill vacancies," so as to read as follows: "The terms of the judges to be elected under the constitution shall begin on the first day of January after their elections."

The argument is pressed upon us, however, that the latter portion of the constitutional amendment now contained in the Code, § 2-3103, requires a conclusion that Judge Almand's appointment holds until the first day of January, 1945, and that his tenure of office thereunder could not be affected by the result of any election for a successor to Judge Humphries, held at the general election next preceding December 31, 1942; although Judge Humphries was elected for a term beginning January 1, 1939. That portion of the organic law relied on reads as follows: "Every vacancy occasioned by death, resignation, or other causes shall be filled by appointments of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." It looks to the filling by the Governor for a part of the vacancy, but not all of it.

The word "vacancy," as applied to an office, has no technical meaning. People v. Edwards, 93 Cal. 153 (28 Pac. 831); State v. Caulk, 3 Del. 344 (138 Atl. 354); Frantz v. Davis, 144 Va. 320 (131 S. E. 784); Commonwealth v. McAfee, 232 Pa. 36 (81 Atl. 85); State ex rel. Chenoweth v. Acton, 31 Mont. 37 (77 Pac. 299); Territory v. Mann, 16 N. M. 744 (120 Pac. 313); State ex rel. Lamey v. Mitchell, 97 Mont. 252 (34 Pac. 2d, 369); State ex rel. Wayland v. Herring, 208 Mo. 708 (106 S. W. 984); and other cases cited in 43 Words and Phrases, 604.

"Vacancy," as applied to an office, applies, not to the incumbent, but to the term, or to the office, or both, depending generally upon the context of a statute, or a constitutional provision in which the term is used. People v. Le Fevre, 21 Colo. 218 (40 Pac. 882). Vacancy may refer to the office or to the term. Chadduck v. Burke, 103 Va. 694 (49 S. E. 976). To hold that the words "every vacancy," as used in the Code, § 2-3103, meant vacancy in the term would harmonize it with the words of the latter part of the section; to wit, "at which election a successor for the unexpired term shall be elected." The right and duty of the Governor under this paragraph of the constitution to appoint is shown by the context not to contemplate vacancies other than those that occur in the term; else no reasonable meaning could be given to the concluding words of the section. The voters at the general election in November, 1944, could hardly elect a successor for the unexpired term of Judge Humphries that expired on December 31, 1942. The unexpired term in the minds of the framers of the amendment was the remaining portion of a definite, fixed term in which a vacancy had been occasioned by death, resignation, or other cause. Nor could the remaining portion of the time for which Judge Almand was appointed be meant. The words "until his successor is qualified," found in the constitution and appearing as section 2-3101, mean a successor elected by the people. *Pittman* v. *Ingram,* 184 *Ga.* 255, 258 (190 S. E. 794). While it has been said that such additional tenure after the regular term is just as much a part of the incumbent's term as the antecedent fixed term (*Shackelford* v. *West,* 138 *Ga.* 159, 74 S. E. 1079), yet it is different in quality, being indefinite in extent and conditional in character. See the authorities cited in *Mitchell* v. *Pittman,* 184 *Ga.* 877, 893 (194 S. E. 369). The use of the word "term" in *Shackelford* v. *West,*

supra, contained in the sentence, "When this contingency happens, this extension is just as much a part of the term as the antecedent fixed term," was used in the sense of tenure. It has been observed that while the words tenure and term are not strictly synonymous, they are frequently so used by legislative bodies. State ex rel. Weeks v. Olson, 65 N. D. 407 (259 N. W. 83). And we may add that they are also frequently so used in court opinions, when there is no necessity for differentiating between the meanings of the two words. "During one term there may be several tenures, but there can not be several terms in one tenure." "The term remains invariable, always the same, and is not subject in its duration to the wishes or agreements of any persons whomsoever [or even by death]; while the tenure of an incumbent may always be terminated by his resignation and its acceptance [or by his death]" State ex rel. Wilson v. Parker, 30 La. Ann. 1182. The term of an office, as fixed in the constitution or statute creating the office, is not to be confused with the tenure of an officer, and is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed. State v. Young, 137 La. 102 (68 So. 241).

What effect shall be given to that portion of the constitutional amendment (Code, § 2-3103), so far as the same concerns appointments by the Governor until the first day of January after the general election held next after the expiration of thirty days from the time the vacancy occurs?

Originally article 6, section 3, paragraph 2, contained a provision that successors to the judges of the superior courts then in office should be elected by the General Assembly, as follows: one half, as near as may be, whose commissions are the oldest, in the year 1878, and the others in the year 1880. *Wellborn* v. *Estes*, 70 *Ga.* 390, 394. In this manner approximately one half of the judges were elected in one year and the other half in two years thereafter. We still elect approximately half of them at one time and the others at another. Had Judge Humphries been of that class of incumbents elected in 1940 for a term which began January 1, 1941, then upon his death, had it occurred more than thirty days before the general election, this would have been the situation: There would not only have been a vacancy in the office, but a vacancy in the term ending January 1, 1945. The Governor would, under

the applicable provision, have filled the vacancy in the term by an appointment to run until the first day of January next after the general election in 1942, at which election a successor for the balance of the unexpired term would be elected. But since, under the actualities as they existed, the only vacancy was in the term that ended January 1, 1943, there was no authority for an appointment to run until the first day of January, 1945. The Governor, under the constitutional amendment above referred to, does appoint a judge of the superior court until the first day of January after the general election next after the expiration of thirty days from the time such vacancy occurs, whenever the term in which the vacancy occurs extends beyond the general election held next after the expiration of thirty days from the time such vacancy occurs, so that "at which election a successor for the unexpired term shall be elected." But this refers to cases where an election for the unexpired term is held, and not to a case where an election for a full new term must be fixed. If, as here, the unexpired term is not of sufficient duration to permit an election, then the appointee holds for the full unexpired term. The thirty-days provision is operative only when the vacancy occurs that period or longer before the election. Otherwise it is inapplicable. The exercise of the authority of appointment claimed by counsel for the respondent under the constitutional provision now contained in the Code, § 2-3103, must necessarily be given a restricted meaning, and is limited to those instances where an election is to be had "for the unexpired term."

Suppose that last spring Judge Humphries had decided not to offer again for renomination and election, and that Mr. Hooper had been nominated to succeed him on January 1st. Would the death of Judge Humphries, some two weeks before the election, prevent the electorate from choosing at the November election his successor for the full term? If the argument of Judge Almand's attorneys prevails, it would mean that it would do so, in spite of and contrary to the constitutional provision that successors to those judges in office should be elected at the general election next preceding the expiration of their terms of office. This last referred to provision can not be lifted out of the constitution. It is a part of our organic law. If the next succeeding paragraph can be given a construction so as to make the two harmonize, it should be done.

The Governor can only appoint to fill a vacancy. That much is plain. It is the death that created the vacancy. What vacancy? A vacancy in the term for which Judge Humphries was elected. If the balance of the term extends until beyond the next general election held more than thirty days after the vacancy occurs, then and in that event the appointment is to be until the general election in 1944, at which time a successor for the balance of the unexpired term is to be elected, because the term in which the vacancy occurred runs until that time and until January 1st thereafter. But when the term in which the vacancy occurs ends with December 31, 1942, the latter portion of section 2-3103, in order to harmonize it with section 2-3102, must be held not applicable, but the appointee only holds for the remainder of the term and until January 1st after Judge Humphries' successor was regularly elected, as pointed out in the Code, § 2-3102. The constitutional mandate is not that the successors to the present incumbents shall be chosen at the general election next preceding the expiration of their respective terms "unless the judge dies within thirty days of such general election, in which event no one shall be at such election chosen for the term immediately beyond that for which the deceased had been elected." The quoted words, or their equivalent, would have to be read into the section if Judge Almand's contention be sound.

The scheme of the constitution is that superior-court judges are to be elected by the people at the general election in November, except that where a vacancy occurs the Governor shall temporarily fill the office by appointment; and that when the vacancy happens in less than thirty days before such general election, his appointee shall be commissioned for no longer time than that part of the term which was cut short by the event which caused the vacancy, and for a lesser length of time if the original term in which the vacancy occurs ran beyond the date of the general election held in the second year thereafter, and if the vacancy occurs before any general election for members of the General Assembly is to be held which intervenes before the end of the term in which the vacancy occurs. Any other construction would render meaningless the words in the latter portion of Code section 2-3103, to wit, "at which election a successor for the unexpired term shall be elected;" because, as applied to the instant case, the election there referred to would not be

after an unexpired term of Judge Humphries. The unexpired term of Judge Humphries ended on December 31st. Since, under the plain and unambiguous provision of paragraph 2 of section 3 of article 6 of the constitution, the successors to the present incumbents (referring to judges of the superior courts) shall be elected by the people at the general election next preceding the expiration of their terms, the immediately subsequent paragraph which deals with filling vacancies should not be so construed as to nullify the provision of paragraph 2, unless the entire language of the latter paragraph, together with the context, so requires it. If, regardless of when the four-year term expired, whenever a judge of the superior court resigned, the Governor's commission to one appointed in his stead ran until the first day of January after the general election held next after the expiration of thirty days from the date of the resignation, this situation could happen: Suppose in the Kennesaw Judicial Circuit, if we had one by that name, Judge X ran in the primary and was defeated by W. At the general election in November, 1938, W was regularly chosen to succeed Judge X, the latter's four-year term expiring on December 31, 1942. On December 24th, 1942, Judge X resigns. His resignation is accepted. Then the Governor appoints ex-Judge X to fill the vacancy. What vacancy? The vacancy in the term regularly ending on December 31st thereafter. The successor for the succeeding full term had already been chosen in the manner provided by the constitution. Would the new commission given to Judge X hold until the first day of January, 1945? Manifestly not. But if the words "Every vacancy," etc., occurring in section 2-3103, are to be given the meaning contended for by counsel for the respondent, there is no escape from it.

Take another illustration: Suppose upon the resignation of Judge X, of the Towaliga Circuit, the Governor appoints B. Within a week of the next general election B resigns. C is then appointed, and two years later, within a week of any general election he resigns, and the Governor appoints B. Could the provision of the immediately preceding paragraph of the constitution, that the people shall elect the judges for a term of four years, be ignored by an arrangement of this kind? It could be, if the meaning to be given the succeeding paragraph of the constitution be that contended for by counsel for respondent.

The foregoing illustrations are extreme; but as has been more than once remarked, it is by the putting of an extreme case that principles are best tested, and the soundness or unsoundness of a legal proposition developed.

It is argued that to give to the constitutional provision any other meaning than that insisted upon by the respondent might lead to equally absurd results. Suppose, for instance, Judge Humphries had suddenly died the night before the day of the election. Would it be contended that his successor for the full term should have been elected on that day? There is a respectable line of authorities which in effect hold that when a special election is held for the purpose of filling a vacant office, and when it appears that there was no sufficient notice given of the fact that such election would be held, it being obvious that the great body of the voters were in ignorance of the fact that an election would be held, and hence there was no actual choice by the electors, such semblance of an election was void. Typical of this view are Foster *v.* Scarff, 15 Ohio St. 532, and State ex rel. Sampson *v.* Superior Court, 71 Wash. 484 (128 Pac. 1054, Ann. Cas. 1914C, 591), although each of these cases concerned elections held to fill vacancies. And the same rule will apply, according to some of the authorities, to a special election held to fill a vacancy in the office, although held at the same time as the general election. The rule followed seems to be that when the electors had not sufficient notice of the election, and not sufficient opportunity of ascertaining that there was a vacancy to be filled, it would not be counted as an expression by popular vote.

While there are precedents to the effect that where in a special election to fill a vacancy, even though held on the day of the regular election, and the small number of votes cast, together with the shortness of the time between the date of the vacancy and the so-called election, so as to make it plain that there was no actual choice by the electors, such would be treated only as a semblance and not a real election, the rule is otherwise when the election is one, not to fill a vacancy in the term, but an election held regularly under the law at that particular time to choose an official for a full term. This distinction was pointed out in Foster *v.* Scarff, and in Sampson *v.* Superior Court, supra, and cases cited in the opinion in the latter case, together with the helpful note to that case in 33 Am.

& Eng. Ann. Cas. 595, 597. The distinction is based on the proposition that the electors may well be presumed to know when the regular terms of officers begin and end, but there is no such presumption as to vacancy. Many cases on this subject are cited in the note above referred to. Compare *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891). If under any line of reasoning it should be held that there had been no election, it seems to follow that it would have been the duty of the Governor to appoint as judge some one to fill out the remainder of the unexpired term, and also thereafter to have made another appointment, the appointee to take office after the expiration of the unexpired term of Judge Humphries, who would hold until a judge could have been elected at the next general election for the remainder of the new term which began January 1, 1943. However, we cross no bridges until we come to them.

It is urged upon us that the words in the paragraph of the constitution relied on by respondent need no construction; that the mandate of the constitution is so plain that all that needs to be done is to apply it, and, so applying it, to hold that since the vacancy occurred within thirty days of the general election, the Governor's appointee necessarily held until after the general election that was held next after the thirty days. To so apply it would require us, in the first place, to shut our eyes to everything else except the thirty-day provision, and to give effect to it literally, regardless of the absurdities to which it might lead. Such is not the rule to be followed.

In the second place, we should have to construe the word "vacancy" to mean vacancy in the office, instead of vacancy in the term, the latter meaning being the correct one, it seems to us, when the whole subject-matter and the context is considered.

In the third place, to follow counsel for the respondent, we should have either to totally ignore the words in the same paragraph which declare that at such election a successor should be chosen for the unexpired term, and say that the "unexpired term" has reference not to the remainder of the term of the occupant whose death caused the vacancy which the Governor had to fill, but to the new term which begins on the expiration of the term for which the deceased judge had been chosen in 1938. Else we would be confronted with the paradox of an election in 1944 to fill the

balance of an unexpired term which expired on December 31, 1942. To so hold would be unreasonable, to say the least.

In the fourth place, we would have to run counter to the legislative construction of the constitutional provision under consideration. Act of 1872, appearing in all our Codes published subsequently to its enactment, and now appearing as section 89-502 in our present Code, as follows: "In all cases where the office of Governor, Senator or Representative, Justice of the Supreme Court or Judge of Court of Appeals or superior court, Attorney-General, solicitor-general, Secretary of State, State Treasurer, Comptroller-General, ordinary, sheriff, clerk of the superior court, tax-collector, tax-receiver, county treasurer, county surveyor, or coroner, or either of them, shall become vacant by resignation, death, or the removal of the officer before the expiration of his term, the successor to said officer shall be elected or appointed only for the remainder of the unexpired term."

The Codes of 1895 and 1933 were adopted by the General Assembly. Also the act of 1922 (Code, § 34-1904), which says in effect that the party authorities may fill vacancies in nominations of a political party which occur "prior to the regular election, at which the name of said nominee is to appear on the official ballot."

In the fifth place, it would be out of harmony with the whole constitutional scheme as to the selection of judges of the superior courts. November, 1942, was the time of a regular quadrennial election as to the office held by Judge Humphries, for the purpose of electing a successor for the full term beginning January 1, 1943. If respondent's position is correct, it would necessarily follow that the death of Judge Humphries within thirty days before that election and the appointment of respondent would operate to call off entirely that regular quadrennial election, with the result that the last quadrennial election as to this office would have been held in November, 1938, and another would not take place until November, 1946. Could it be reasonably supposed that it was intended by the provision contained in the Code, § 2-3103, to skip entirely the regular 1942 quadrennial election as to this office by reason of the circumstances shown by this record?

While the same constitution makes it the duty of the Governor to appoint to fill vacancies, all such authority to appoint is to be, wherever possible, so construed as to limit, rather than to enlarge.

the power. It was never contemplated that under paragraph 3 of section 3 of article 6 of the constitution of this State, authorizing the Governor to appoint to fill a vacancy in a term of a judge of the superior court, he could in any case commission him for a period longer than the remainder of the unexpired term. The clause is not the only one in the paragraph of the constitution last cited. It must be read in connection with the word "vacancy," and the clause relating to an election "for the unexpired term." The appointee was intended to hold until January 1st next after the succeeding general election only in the event the term of his predecessor in office did not earlier expire. The Governor's appointment under the paragraph last mentioned being to fill a vacancy in an existing term, and the language being that it "shall be filled by appointments of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs," could only be applied to a case where the term, the vacancy in which made necessary the appointment, extended long enough to permit the voters to make a choice of a judge for the balance of the unexpired term at the general election next after the thirty days from the happening of the vacancy.

In determining the meaning of a provision contained in the constitution of this State, decisions dealing with similar questions arising in other States may be looked to, although not controlling. The conclusion reached by us is believed to be in harmony with People ex rel. Jackson v. Potter, 47 N. Y. 375, and Bearden v. Collins, 220 Cal. 759 (32 Pac. 2d, 604). In the States of both of the courts last cited there were provisions in the constitutions which, though not in the exact language of ours, were nevertheless sufficiently similar to make the rulings in those cases much in point on the issue now before us. In the New York case the facts were these, as stated in the opinion: Enoch Rosekrans, at the adoption in 1870 of the judiciary article by which the constitution was amended, was an incumbent of the office of Justice of the Supreme Court for the fourth district. His term of office would not expire until the 31st of December, 1871. By the sixth section of that article he was empowered to continue in office until the expiration of that term. But on the 6th day of November, 1871, he resigned the office. On the 7th day of November, 1871, at the general elec-

tion then duly, held in the fourth district, the electors thereof chose Joseph Potter to succeed him. This choice was for the full term of fourteen years provided for by the thirteenth section of that article. This full term was to have its beginning on the first day of January thereafter. The resignation of Mr. Justice Rosekrans occasioned a vacancy in the office, which the Governor filled by the appointment thereto of Samuel W. Jackson, the appellant. The action of the Governor. was had under the following provision of section 9 of the 6th article of the New York constitution, reading as follows: "When a vacancy shall occur, otherwise than by expiration of term, in the office of justice of the Supreme Court, the same shall be filled for a full term, at the next general election happening not less than three months after such vacancy occurs; and until any vacancy shall be so filled, the Governor by and with the advice and consent of the senate, if the senate shall be in session, or if not in session the Governor may appoint to fill such vacancy. Any such appointment shall continue until and including the last day of December next after the election at which the vacancy shall occur." Mr. Justice Jackson claimed that by virtue of his appointment by the Governor he was entitled to hold the office until the last day of December, 1872, and, the trial court denying his right so to do, brought his case to the court of last resort in the State of New York. In denying the contention of Mr. Justice Jackson, there was an able opinion by Folger, J., the reasoning of which is likewise applicable to the issues in the instant case; and as to the contentions made here as to the proper meaning of that provision of the Georgia constitution relied on by the respondent, the New York court said: "It will not escape attention that the argument by which the appellant's position is sought to be sustained is confined to a consideration of the ninth section of the sixth article of the constitution. To be successful, it must not only be so restricted, but he must insist upon a rigid literal and exclusive adherence to the terms of the section. In this it runs counter to cardinal canons of construction. In the construction of a law, every part of it must be viewed in connection with the whole, so as to make if possible all its parts harmonious. (1 Kent, 462.) The intent of the lawmaker is to be sought for. When it is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by considering the

words of any part, but by ascertaining the general purpose of the whole, and by considering the evil which existed calling for the new enactment, and the remedy which was sought to be applied. And when the intent of the whole is discovered, no part is to be so construed as that the general purpose shall be thwarted, but all is to be made to conform to reason and good discretion. (Id.) And the same rules apply to the construction of a constitution as to that of a statute law. (Per Johnson, J., Newell v. People, 7 N. Y. 9-97.)

"When the whole sixth (or judiciary) article of the constitution is considered, certain purposes are clearly indicated. It was purposed to provide for the State a general and complete and continuous judicial system, and to create, or recognize and continue, all the judicial officers needed therefor, save those of inferior local courts. (§ 19.) It was designed that the general and (except in cases of exigency, and for some inferior local courts) the exclusive mode of filling these offices (unless the people, at a time therein provided for, do determine otherwise) (§ 17), should be by election by the people, and not by appointment. (§§ 2, 13, 15, 16, 18, 19.) And that that election should, for the officers of higher grade be a general one, when it was more likely that the whole people would take part in it. It was conceived that the system to be supplanted was defective, in the short term of office it gave; and hence it was intended by the new article, to create and secure a longer term, and to avoid fractions of terms. (Sections above cited, and §§ 3, 9, 12.) It was designed that one full term should follow directly after another full term, with no break of regular and connected succession. It was so arranged that these terms should end with one and begin with another and the next political year, whereby the people and all their executive officers should know beforehand to take care for the expiration of a term, by provision to that end at the previous general election. (§§ 2, 13, 15.) For although this article does not, in terms, speak in these sections of the general election, yet a constitution is to be held as prepared and adopted in reference to existing statutory laws upon the provisions of which in detail it must depend to be set in practical operation. (Cass v. Dillon, 2 Ohio, 607; and see, per Walworth, Ch., in The People v. The Mayor etc., 25 Wend. 9-13; per Denio, Ch. J., in The People v. Draper, 15 N. Y. 532-537.) Then the New

York Court of Appeals continued: "Such are some of the more important general purposes of this judiciary article. These were some of its provisions which are in regular routine to be ordinarily operative. But there were also contingencies apprehended and to be provided for, which could not be met by them, and which required exceptional provisions of occasional and temporary operation. It is consonant with law and with common sense, that these should not clash with the general design, but should be in harmonious subservience thereto. They should be in the nature of saving clauses in a statute (Dwarris, 513), or exceptions in a conveyance, something smaller than the thing itself, and not nullifying it. (4 Kent, 468.) When a general intention is expressed in an act, and also a particular intention incompatible therewith, the last shall not restrain the signification of the first. (Andree v. Fletcher, 2 T. R., 164; Churchill v. Crease, 5 Bing. 180.) It was foreseen that, in the various ways designated by the statute as to vacancies in office (1 R. S. 122, § 25), vacancies would occur, to the public harm if left unfilled. So the filling of a vacancy was provided for. (§ § 3, 9, 12.) It catches our attention as to this too, that the general plan of the article is still held to. Only the vacancies designated in the statute are provided for. These do not include a result of an expiration of the term of the office. That is still left to be provided for according to the general purpose, by the choice of the electors at the general election previous thereto. And vacancies cared for are, as a prime intent, to be filled by election. The election to that end is to be for a full term, so that then also a fractional term may be shunned."

The court next took up the view that there might be a vacancy unknown to the mass of the electors, and that one might be chosen with only a few votes cast, without general notice. On this subject the court said: "There was this possible danger to be forecast against. And to that end, a novel and peculiar provision was adopted. It was that, though as a general proposition the vacancy should be filled at a general election and for a full term, yet as an exception therefrom, it should not be filled by election at a general election happening less than three months after the vacancy should occur, so that full notice should be had of the occasion. But as it might in such case chance that some time would elapse before the vacancy could be supplied by election, to the public inconvenience,

this further contingency was met by this other still more subordinate provision, that, until it should be so filled, the Governor was empowered, with or without the advice and consent of the Senate, as it should or should not be in session, to fill it by appointment. And holding to the words of this section, and relying upon them alone, the proposition urged in behalf of the appellant is, that the choice of the electors is defeated; a choice made at the general election previous to the prefixed expiration of a regular term; a choice of a successor for a new and full term approaching in its regular order of succession. The proposition is that the selection by the people is postponed until the next political year, and thrown beyond the commencement of the foreordained regular term; that a fractional term of twelve months or over is created, and that such creation is by executive appointment and not by election. It is apparent that if such a construction of the ninth section is adopted, much of the general intention of the article is nullified. Other more irritating evils must flow from such a construction, if it shall prevail. It is true that where there is no doubt of the intention of the law-maker, an argument from the consequences of the enactment can have no weight. (The People v. Green, 2 Wend. 277, per Marcy, J.)"

Continuing, the court said: "If a vacancy in a term just about to expire, occurring by a resignation made the day before a general election, may defeat the electors of their privilege to choose an incumbent for the new term just about to begin, so a resignation on the day after, or on any day after the election during the running of the term, will have the same effect. More than that, too. The appointee of the Governor, who, according to this construction may hold the office for the whole of the political year succeeding his appointment, can before that year expires, and within three months of the general election of that year, or after the general election, and during the year resign his office, and then a vacancy again occurs, to be again filled by appointment for a like fractional term of twelve months or more. And this succession of appointment and resignation, and resignation and appointment, may be kept up as long as the judicial and executive servants of the people may be willing to act on it. Thus would the electors be permanently defeated in the exercise of their constitutional privilege of choice. It needs not to name all the evils which

would thus result. It is sufficient to say that it would work an entire perversion of the spirit and general intent of the judiciary article. And for that reason such a construction is to be rejected, upon the principle of construction above laid down, unless the clear and unmistakable force of the ninth section, when read in connection with the entire article, shuts us up to it. But we are not thus bound, save by a rigid adherence to the very letter of the section, regardless of other parts of the article, of equal or greater importance, and of equal claim to consideration."

Recalling that under certain provisions of the New York constitution (sections 6 and 16), the time for the election of judges was fixed, their terms being for a definite number of years, the court made this argument: "These provisions of sections 6 and 13 are as explicit, and why not as rigid and inflexible, in their language and command as those of section 9? All can not stand or be enforced together. Which shall yield or adapt themselves to the other? Clearly those which provide for a need occasional and temporary should give way to those which are of usual and continuous and imperious operation, and make a part of the essential framework of the general plan. And so of the last sentence in section 9: 'Any such appointment shall continue until and including the last day of December next after the election at which the vacancy shall be filled.' Cases can be supposed in which this provision may have its full scope without conflicting with any other part of the article. Thus, if Mr. Justice Rosekrans' term would have expired on the last day of December, 1872, and his resignation had taken place as it did in fact, there would have been no hostility in the prescribed action of all parts of the article. The Governor would have appointed to fill the vacancy, and the term of his appointee would have continued until and including the last day of December next after the election in November, 1872. At that election the electors of the fourth judicial district would have chosen a successor for a full term of fourteen years, which would have commenced on the first day of January next after his election. Thus it is seen that the provisions of the ninth section are not nugatory, though held to wait upon those of the sixth and thirteenth sections. They anticipate a case which may happen, and they prepare for it. But to give them controlling operation in the case in hand is to disregard or suspend the provisions of sec-

tions 6 and 13 above quoted. The ninth section must yield to those sections, for they are of the general scope and intent of the instrument, and provide for what will of a certainty arrive in the usual course of events, while it is for a special purpose, and looks but to an exigency, uncertain of occurrence and temporary. It is not blotted out, but being prepared for a contingency, and for a contingency only, it must abide in subserviency until the exact contingency approaches to meet which it is needed."

The New York court said further: "It is claimed that by the resignation of Mr. Justice Rosekrans not only has he created a vacancy in the office during the remainder of the term for which he was entitled to hold it, but that the effect of his resignation is thrown forward and has created a vacancy in a term next succeeding his; a term existing in exact and literal accordance with domineering provisions of the constitution and of the laws, and to which the privileged electors have chosen an incumbent now living, and who has qualified. Mr. Justice Rosekrans could not resign that which he did not hold. He did not hold, nor was he entitled to hold, the term beginning 1st January, 1872, nor any part thereof. He could not then resign that term nor any part of it. Hence the resignation which he made could create no vacancy in the office for that term or any part thereof. Hence there was no vacancy in the office for that term to be filled, nor any part thereof. The vacancy which he did create was for the remainder of his unexpired term, and for no other time. This was the vacancy to be filled, and no other. And when the power conferred by the ninth section of the judiciary article is invoked to fill that vacancy, however great the abstract extent of the power, as the language in which it is conferred is separately considered, it is limited in its practical exercise in the particular case by the constraining force of other parts of the article to the exact object to be accomplished, as that object is made specific by the facts of that particular case. In the case in hand, that exact object was to fill a vacancy beginning 6th of November, 1871, in an office the regular term of which was unexpired, but which would expire on the 31st of December of that year."

In view of these and other considerations it was held that the resignation of Mr. Justice Rosekrans created a vacancy in the office of Justice of the Supreme Court for the fourth district, no longer than from the day of his resignation until and including the last

day of December, 1871, and that the appointment by the Governor could be for that space of time and no longer. People ex rel. Jackson v. Potter, 47 N. Y. 375-389.

Bearden v. Collins, 220 Cal. 759 (32 Pac. 2d, 604), is equally in point. The court thus stated the facts: "It appears that in 1928 Judge Cabaniss was duly elected to the superior court of said city and county [San Francisco] for a full term of six years, ending on the first Monday after the first day of January, 1935. He duly qualified and thereafter acted as such judge until April 19, 1934, on which date he died. His death, therefore, occurred during the year in which an election would have been regularly held to elect his successor for the ensuing full term of six years. Petitioner contends that the effect of the death of Judge Cabaniss on said date will be to delay the election of his successor to the general election of 1936, and that no election to fill said office can be held during the year 1934." The case involved construction of section 8 of article 6 of the constitution of the State of California, as follows: "The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. A vacancy in such office shall be filled at the next succeeding general state election after the first day of April next succeeding the accrual of such vacancy by the election of a judge for a full term to commence on the first Monday of January after the first day of January next succeeding his election. The Governor shall appoint a person to hold such vacant office until the commencement of such term." The Supreme Court of California decided as follows:

"Section 8 of article VI of the Constitution, relating to the filling of vacancies in the office of judge the superior court, does not contemplate a deferred election in a year when the general law provides for a regular election to fill the new term to begin the following year; and when a term is expiring at the close of the year of a general election, the occurring of a vacancy at any time in such year does not defer the election or extend the term of office, and when such general election is held it is not to fill the vacancy for the unexpired portion of the existing term, but is an election for the full ensuing term. Under section 6 of article VI of the constitution, it was clearly the intent of the framers that the people should reserve to themselves the right to elect judges of the superior

court and their successors at regular intervals, and that any other method of filling said offices should be by the use of an emergency method to fill vacancies until a general election should be held. Under section 8 of article VI of the constitution, when a judge of the superior court dies after the first day of April in a year when the general law provides for a regular election to fill the new term to begin the following year, the election of the successor to such judge shall proceed in the same manner as though no vacancy in the office had occurred, the successor elected at such election shall hold office for the full term of six years, and any appointee named by the Governor holds office only for the remainder of the term."

On the controlling point the decision is brief, clear, and strong, as follows: "Petitioner argues that the second sentence of said provision is so clear and unambiguous that there is no room for judicial interpretation or construction thereof. If we accept this contention, it follows that no election can be held in 1934 to fill said office; and this is so even though the Governor might choose not to appoint any person to fill said vacancy, and thus the office would remain vacant until the first Monday after the first day of January in 1937. This necessarily must be the argument of petitioner; otherwise she has no standing in court as the vacancy has not as yet been actually filled. Again, following the same reasoning, had Judge Cabaniss lived until after election day of this year, and yet not stood for re-election, or had he run, been defeated, and thereafter, and before the first Monday after the first day of January, 1935, had resigned or died, the judge-elect could not qualify as such officer for the ensuing term, and his election would be void. We can not agree that such results were contemplated by the people in adopting said constitutional provision. Said clause, within itself, gives convincing evidence that the intent was to provide for the filling of vacancies for the remainder of the existing term in which they might occur, and that the deferred election for this purpose must be held before the expiration of such term; that when such election is held it is not to fill the vacancy for the unexpired portion of the existing term, but is an election for the full ensuing term. Clearly the provision does not contemplate a deferred election in a year when the general law provides for a regular election to fill the new term to begin the following year. Therefore when a term is expiring at the close of the year of a general elec-

tion, the occurring of a vacancy at any time in such year is a false quantity, except that, under the last sentence of said provision, the vacancy can be filled by the Governor until the commencement of. the new term. Moreover, in order to harmonize the first sentence of said provision and other related provisions of the constitution with the sentence under construction, it is necessary to give it the above meaning.

"Again, to give the provision the construction contended for by petitioner would be to arbitrarily add two years to the term of the office held by Judge Cabaniss, which expires at the end of the present year, and to follow such addition by conducting an election to fill a vacancy almost two years after expiration of the term in which it occurred.

"Under article VI, section 6, of the constitution, it was clearly the intent of the framers that the people should reserve to themselves the right to elect such judges and their successors at regular intervals, and that any other mode of filling said offices should be by use of an emergency method to fill vacancies until a general election should be held."

*Ross* v. *Jones,* 151 *Ga.* 425 (107 S. E. 160), relied on by counsel for respondent, dealt with a question altogether different from the one before us. There the legislature had created an additional judgeship for the Macon Circuit. It was not, as here, a contest between an appointee and one who had been elected as the successor to an incumbent. The act creating the new judgeship (Acts 1920, p. 95) contained a provision that it should not go into effect until November 1, 1920, and that the Governor should appoint and commission the additional judge until January 1, 1923. This court upheld the act as against the contention that it was repugnant to those provisions of the constitution of Georgia which relate to the election and terms of office of judges of the superior courts. This court treated the act as creating a vacancy, just as had been done in *Wellborn* v. *Estes,* 70 *Ga.* 390, and held that its effective date was November 1, 1920. It was held to be proper therefore, since a vacancy existed on November 1, 1920, and the next general election was on November 2, 1920, that the Governor, under the terms of the act, made the appointment until January 1, 1923, which was "until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy oc-

curs." Nor did the court in *Pittman* v. *Ingram,* 184 *Ga.* 255 (supra), decide anything to the contrary of the views herein expressed. That was a case where Judge McFarland was elected for a full term, and died before the beginning of the full term for which he was elected.

We are of the opinion that the tenure of office of Judge Almand, under the appointment of the Governor, ended on December 31, 1942, provided a successor was lawfully elected at the general election in November, 1942.

■ Was the relator, Hooper, lawfully elected? The regular time to choose a successor to Judge Humphries for the full term was at the general election in November, 1942, since the incumbent took office on January 1, 1939, the term running for four years, and until his successor was qualified. The relator received a substantial majority of the votes cast on said election, and the result was duly certified. The validity of his election is attacked on the ground that the Australian ballot law in force in many counties in this State requires candidates to qualify with the Secretary of State thirty days before the general election; and that if they do not, they are not entitled to have their names on the official ballot. Also, that as a result of conflicting and contrary instructions from the Governor on the one hand, and the Secretary of State on the other, there were four counties in which the ordinaries put no one's name on the ballot at all. This challenge carries with it the insistence that Mr. Hooper was not legally nominated. The record shows that he obtained a majority of the votes in those counties operating under the Australian law, and also in those not operating thereunder, it being optional as to whether a county will adopt it. It is also stipulated in effect that certain members of the State Democratic Executive Committee, assuming the right to act, did undertake to nominate Mr. Hooper as the party's candidate for the judgeship of the Atlanta Circuit, and caused his name to be so certified to the Secretary of State.

The contentions of the respondent that Hooper's election was illegal can not be sustained. In *Cartledge* v. *Augusta,* 189 *Ga.* 267 (5 S. E. 2d, 661), the validity of a constitutional amendment was attacked on the ground that it had not been legally submitted to the people, because on the day it was submitted no election was held in three named counties. In repelling the attack there made

on the ground stated, this court said: "To whose fault, if it was the fault of any one, can be attributed the failure to hold an election in the three counties named, does not appear. It would be a monstrous proposition to hold that the failure of three counties out of one hundred and fifty-nine to open the polls on the day when a constitutional amendment is being voted upon would affect the validity of its submission to the people or of the election itself; or, even in the face of an allegation that they would have voted against the amendment, to count the entire number of registered voters in the three counties as voting against it. The tabulation of the result must be based on the number of ballots actually cast throughout the State who vote either for or against it." Accordingly it must be here ruled that the failure of the ordinaries in four counties to place on the ballot the name of the candidate did not affect the legality of the election; nor did the further fact that, according to the stipulation, in sixty-nine counties the name of Judge Humphries alone appeared on the ballot as the Democratic candidate for judge.

The so-called Australian ballot law may be found in chapter 34-19 of the Code. It is not operative in any county until first recommended by two successive grand juries. Code, § 34-1901. A portion of that law (§ 34-1904) reads as follows: "In the event of the resignation or death of any nominee of any political party prior to the regular election, at which the name of said nominee is to appear on the official ballot, said vacancy in nomination shall be filled in such manner as may be determined by the proper authorities of such party." The quoted words follow in the same section a provision that requires the filing of notice of candidacy with the Secretary of State at least thirty days before the regular election, and must be taken as a modification of such requirement.

It was further urged that Hooper's nomination was illegal. It is stipulated that at a called meeting of the Executive Committee of the party those present, aided by certain proxies, unanimously nominated him, and so certified to the Secretary of State. It will not be determined whether Hooper's nomination was regular or irregular, or even invalid. Those purporting to represent the party certified to the Secretary of State his name as the party nominee, and he was elected.

Whether or not there could ever arise a case where it was so

patent that the people had no real opportunity to choose, even though the election was a general election, and no vacancy was involved, as to justify a court in disregarding the distinction pointed out in the Ohio and Washington cases referred to above, is not here for decision; for this record shows no such situation.

A case might present the following features: The real contest was in the primary. Only the name of one nominee appeared on the ticket to be voted at the general election for a full term, he being the incumbent, who had run in the primary. He suddenly died on the night before the election, the fact of his death being unknown to the general body of voters. As a result of this, the name of the dead man, being the only one printed on the official ballots, is on the great majority of the ballots cast, but another received a mere handful of votes on "write-in" ballots. It could with some strength be argued that there had in fact been no election, and no real expression of the people's choice. A point somewhat similar was raised in *Wood* v. *Arnall,* 189 *Ga.* 362 (6 S. E. 2d, 722), and *Stephens* v. *Reid,* 189 *Ga.* 372 (6 S. E. 2d, 728); but this court disposed of both of those cases on other grounds. It might be that the semblance of an election held at the proper time on the date of the general election to choose a judge for a full term was surrounded by such circumstances that, although technically regular, it was clearly not an expression of the people's choice, and that it would be a travesty on the law so to declare it. Here, however, the nominee died on October 22, before the general election on November 3 thereafter; at a meeting of the Democratic Executive Committee on October 24 (the Committee having been authorized to act as to all party matters in as full and complete a manner as could the convention or party) those present nominated Mr. Hooper as judge in lieu of Judge Humphries, deceased; the officers of the committee reported Mr. Hooper's name to the Secretary of State as the party's nominee; on the afternoon of that same day the Secretary of State mailed to each of the ordinaries of the State a letter to the effect that Mr. Hooper's name should be placed on the ballot to succeed Judge Humphries, and at the same time certified to the Governor Hooper's name as the Democratic nominee to succeed Judge Humphries for the full term; in eighty-five of the counties the ballots contained the name of Mr. Hooper; in sixty-nine counties the ballots carried the name of Honorable John D.

Humphries; and of more than 60,000 votes cast for this office Mr. Hooper received 43,553 votes.

This opinion, already long, will not be further extended by any lengthy discussion of our ruling on the contentions here dealt with; but we are content merely to refer, as supporting the conclusion we reach, to the cases of *Stewart* v. *Cartwright*, 156 *Ga.* 192 (118 S. E. 859); *Adair* v. *McElreath*, 167 *Ga.* 294 (145 S. E. 841), and to 18 Am. Jur. 263, 264, § 131, where the several contentions of counsel for respondent as here made were discussed and dealt with.

In *Stewart* v. *Cartwright*, supra, it was said: "The constitution of this State, art. 2, sec. 1, par. 2 (Civil Code, § 6396), as modified by the 19th amendment to the constitution of the United States, provides that: 'Every . . citizen of this State who is a citizen of the United States, twenty-one years old or upwards, not laboring under any of the disabilities named in this article, and possessing the qualifications provided by it, shall be an elector and entitled to register and vote at any election by the people: Provided, that no soldier, sailor, or marine in the military or naval service of the United States shall acquire the rights of an elector by reason of being stationed on duty in this State.' The words 'shall be an elector and entitled to register and vote at any election by the people' are unequivocal, and the entire provision amounts to a constitutional guaranty of the right of suffrage, which, though subject to reasonable regulation, can not be absolutely denied or taken away by legislative enactment. There can not be any doubt that a statute providing for an official ballot for use at a general public election, which prescribes the form to be of such character as will deny the voter his right to vote for whomsoever he pleases, would be violative of the above provision of the constitution." While only five Justices concurred in the judgment in that case, Chief Justice Russell, dissenting, was in agreement with the statement contained in the above quotation, his dissent being based on his belief that the constitutional question was not presented. He said: "If the question of the unconstitutionality of the local laws relating to elections in Savannah were anywhere presented in the record in this case so that this question could be properly adjudicated, I think I should hold them unconstitutional, and the same result would then be reached as that which has been obtained by my colleagues."

Accordingly it must be ruled that the ballots containing the name of Mr. Hooper to succeed Judge Humphries are not to be discarded by reason of anything appearing in the Australian ballot law, even if it should be conceded that Mr. Hooper's nomination was irregular and his name was improperly placed on the official ballots.

In *Adair* v. *McElreath*, supra, it was written: "Furthermore, we are of the opinion that the following statement of the law upon this subject is correct: 'All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, unless the provisions affect an essential element in the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election or that its omission renders it void. Voters finding a ticket, or the names of candidates on the official ballot, are not required to determine whether they are entitled to a place thereon, but may safely rely on the action of the officers of the law, and on the presumption that they have performed their duty. And so an election in which the voters have fully, fairly, and honestly expressed their will is not invalid because the certificate of nomination of a successful candidate is defective through an omission of some detail.' 9 R. C. L. 172, 173, § 161. 'Objections relating to nomination must be timely made; otherwise they may be regarded as waived. It is too late to make them after the nominee's name has been placed on the ballot and he has been elected to office; his election can not be impeached on the ground that statutory requirements regarding nomination were not complied with in his case, or that his nomination was procured by unlawful means.' 20 C. J. 132 (§ 152) 3. 'In the absence of statutory provision to the contrary, an election is not invalidated by the fact that the nomination of the successful candidate was fraudulent or illegal, because not made in the manner prescribed by statute, unless the non-compliance with the law had the effect of preventing a fair vote.' Territory *v.* Kanealii, 17 Hawaii, 243 (7 Ann. Cas. 837). 'No election shall be defeated for non-compliance with the requirements of the law, if held at the proper time and place by persons qualified to

hold it, if it is not shown that by that non-compliance, the result is different from what it would have been had there been proper compliance.' Civil Code (1910), § 126."

Whether properly nominated is a political question on which the courts generally will not enter after the election has been had. 18 Am. Jur. 263, 264, § 131.

We have examined the following cases relied on by defendant in error: State ex rel. Halbach v. Claussen, 216 Iowa, 1079 (250 N. W. 195); State ex rel. Hoyt v. Metcalfe, 80 Ohio, 244 (88 N. E. 738); O'Neill v. White, 343 Pa. 96 (22 Atl. 2d, 25); State v. Minor, 105 Neb. 228 (180 N. W. 84); State v. Superior Court, 140 Wash. 636 (250 Pac. 66); State ex rel. Sheets v. Speidel, 62 Ohio, 756 (56 N. E. 871). None of them supports the proposition that the length of the appointee's tenure extends into the term of the one elected at a regular election to succeed the deceased incumbent. In none of the cases relied on by defendant in error was any question involved as to any infringement upon a succeeding term. Several of them held that notice is requisite to the validity of a special election to fill an unexpired term. But that question is not involved here. As we have pointed out, the relator was elected for a full term at the regular quadrennial election, of which the constitution gave full notice to the people.

The writer would be embarrassed by the length of this opinion except that the record involves the title to an important office, and the case requires a construction of a provision of the constitution of this State, which has not heretofore come before this court on a similar statement of facts.

The court erred in denying the prayers of the petition, and in rendering judgment in favor of the respondent.

*Judgment reversed. All the Justices concur, except Reid, C. J., who dissents.*

JENKINS, Justice, concurring. I agree to all that has been said in the opinion prepared for the court by my more learned colleague, Mr. Justice Grice, and do not think that I can add anything thereto, but would like to state in a few words what I consider the controlling factors governing this case.

The constitution by sections 2-3101 and 2-3102 of the Code, provides that the successors of superior-court judges shall be elected at the general election next preceding the expiration of their respec-

tive four-year terms. An election held at the time thus prescribed to fill the office for the next ensuing four-year term is not affected by the provisions of the constitution (§ 2-3103 of the Code), which provides, not for the election or appointment of a judge for the next ensuing four-year term, but for the filling of a vacancy for the portion of the unexpired term occasioned by the death or resignation of the incumbent.

The provision of the constitution embodied in section 2-3103 of the Code relates by its terms to vacancies occasioned by death or resignation of the incumbent, and provides for an election of a successor for the unexpired term, with the proviso, however, that the Governor shall fill such vacancy by appointment until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs. This provision, relating to vacancies occurring less than thirty days from the date of the general election, might thus operate to extend the tenure of such appointee beyond the next ensuing first of January, that is, until such first of January as might come after a general election which has been held more than thirty days after the vacancy occurred, except that such appointed tenure could in no case extend over and beyond the period of the unexpired term to which this section solely relates and to which it in terms refers. The fact that, in order to avoid a hiatus in the office, any incumbent holds over until his successor qualifies does not operate to extend the tenure of an appointee over into the term of one who has been elected for the regular ensuing term at the time prescribed by the constitution for such regular election. For convenient reference and for the purpose of clarifying what has just been said, the provision of the constitution embodied in section 2-3103 of the Code is as follows: "The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections. Every vacancy occasioned by death, resignation, or other causes shall be filled by appointments of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." It will be seen that all contained in the second sentence with reference to "a successor for the unexpired term" merely provides a procedure for what is

expressly excepted in the first sentence by the words "except to fill vacancies," and has no other purpose or meaning. The framers of the constitution could have embodied the same thirty-day proviso with respect to the regular election held for the new full term where the incumbent dies or resigns as they in fact did with reference to an emergency election for the unexpired term. However, since the framers of the constitution failed to do so, its provision with respect to the holding of the regular election for such new full term must be given effect.

REID, Chief Justice, dissenting. Recognizing the importance of the holding made in this case and the application it will have on judicial tenure, it is unfortunate that there must be division among the court as to so vital a question; and therefore my reluctance to dissent is overcome only by an unyielding conviction that the case is being erroneously decided. It seems to me that the terms of the pertinent constitutional provision are so perfectly plain and clear that no interpretation is needed to ascertain their meaning or application. When this is true, this court has no right, merely because all possible contingencies may not have been adequately provided for in the constitution, to enlarge upon and add to the scope of that which is so plain and clear. It seems to me that there was a manifest purpose that there should be no overnight elections in such an emergency. The thirty-day provision was obviously designed with that policy in view. It is not half so violent to say that the "unexpired term" in the circumstances of this case extends over into a new term as it is to make a complete departure from the plain language used in the constitution; nor is there justification for such departure in the belief that existing provisions of the organic law have been found to be inadequate. I must therefore dissent from the holding as made.