BENHAM, Justice,
dissenting.
I have not been able to bring my mind to concur with my associates in the judgment rendered in this cause. This is to me a source of sincere regret. I esteem it a personal misfortune. I have labored to see this question in the light in which they view it, but have been unable to attain to the same conviction. With profound respect for them, and sincere distrust of the justness of my own conclusions, I am constrained to dissent.
Tuttle v. Walton, 1 Ga. 43, 56 (1846) (Nisbet, J., dissenting).[8]
The Georgia Constitution of 1983 unequivocally states that Justices of the Supreme Court of Georgia and Judges of the Court of Appeals of Georgia “shall be elected.” Ga. Const, of 1983, Art. VI, Sec. VII, Par. I. The Georgia Constitution also provides that “vacancies” can be filled by the Governor. Ga. Const, of 1983, Art. VI, Sec. VII, Par. III. Although the word “vacancies” is not defined in Article VI of the 1983 Constitution, historically, in this state, a vacancy is an event “which causes an unexpired term.” See, e.g., Ga. Const, of 1976, Art. VI, Sec. II, Pars. Ill and VIII; Ga. Const, of 1945, Art. VI, Sec. II, Pars. Ill and VIII. See also, e.g., Hooper v. Almand, 196 Ga. 52, 59 (25 SE2d 778) (1943) (the Governor’s right to appoint contemplates vacancies that occur within the term; an unexpired term);[9] Stephens v. Reid, *901 189 Ga. 372, 377-379 (6 SE2d 728) (1939) (by 1896, it was the goal of the legislature to have judges elected by the people; only vacancies which caused an unexpired term were filled by executive appointment); Pittman v. Ingram, 184 Ga. 255 (190 SE 794) (1937) (a vacancy caused “by death or resignation or otherwise” does not refer to a position where no one has been elected). Such “legislative precedent ... is entitled to some respect.” DeKalb County School Dist. v. Ga. State Board of Ed., 294 Ga. 349, 357 (751 SE2d 827) (2013).
Indeed, the above-described understanding of vacancy is consistent with the ordinary meaning of vacancy at the time the 1983 Georgia Constitution was drafted and enacted. For example, the full definition of “vacancy” contained in Black’s Law Dictionary (5th ed. 1979) provides:
Vacancy. A place or position which is empty, unfilled, or unoccupied. An unoccupied or unfilled post, position or office. An existing office, etc., without an incumbent. The state of being destitute of an incumbent, or a proper or a legally qualified officer. The term is principally applied to an interruption in the incumbency of an office, or to cases where the office is not occupied by one who has a legal right to hold it and to exercise the rights and perform the duties pertaining thereto. The word “vacancy,” when applied to official positions, means in its ordinary and popular sense, that an office is unoccupied, and that there is no incumbent who has a lawful right to continue therein until the happening of a future event, though the word is sometimes used with reference to an office temporarily filled.
(Emphasis supplied.) The above-referenced definition coincides with Georgia’s historical understanding that a vacancy, for the purposes of gubernatorial appointment, is when an existing incumbency has been interrupted and there is no incumbent who can legally continue to serve. Furthermore, Article V, Section II, Paragraph VIII (a) of the 1983 Georgia Constitution, which describes the Governor’s appointment powers regarding “any public office,” provides that a gubernatorial appointee is to serve “for the unexpired term.” (Emphasis supplied.) The situation at bar is not an existing incumbency that has been interrupted; but rather is a newly created position that has *902 never been occupied for any period of time. A newly created position cannot logically have an unexpired term that would need to be filled by appointment.[10]
Given the extensive history showing that the Governor appoints when the vacancy in question has caused an unexpired term, it is hard to fathom the executive, legislative, andnowthe judicial branches’ departure from the letter and spirit of our Constitution. It seems this devolution began in the 1960s when Governor Vandiver issued executive orders filling newly created judgeships on the Court of Appeals with his appointees. It is clear that Governor Vandiver had no constitutional authority for these actions. The Georgia Constitution of 1945, which was in effect at that time, provided as follows:
In case of any vacancy which causes an unexpired term [of a Justice of the Georgia Supreme Court], the same shall be filled by executive appointment, and the person appointed by the Governor shall hold his office until the next regular election, and until his successor for the balance of the unexpired term shall have been elected and qualified.
The times and manner of electing Judges [of the Court of Appeals], and the mode of filling a vacancy which causes an unexpired term, shall be the same as are or may be provided for by the laws relating to the election and appointment of Justices of the Supreme Court.
Ga. Const, of 1945, Art. VI, Sec. II, Pars. Ill and VIII (emphasis supplied). The new judgeships in I960[11] and 1961[12] were not vacancies causing unexpired terms and so Governor Vandiver was not constitutionally authorized to fill those positions by executive order or otherwise. Moreover, the legislation which created the seventh, eighth and ninth judgeships did not grant Governor Vandiver any explicit authority to appoint judges for the new positions.[13] Yet, it *903 appears no one challenged the constitutionality of Governor Van-diver’s actions in 1960 and 1961 and no one challenged the constitutionality of any of the subsequent gubernatorial appointments to newly created Court of Appeals judgeships in 1996[14] and 1999.[15] The fact that these gubernatorial appointments went unchallenged, however, does not cure the constitutional problem at stake in the present controversy. The majority opinion has failed to explain how executive and legislative action cloaked as tradition, or what the majority terms as a “standard practice,” which was not in fact the standard, can trump the Constitution of our state. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U. S. 579, 610 (72 SCt 863, 96 LE 1153) (1952) (Frankfurter, J., concurring) (“The Constitution is a framework for government. Therefore the way the framework has consistently operated fairly establishes that it has operated according to its true nature. Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them.”). Here, both the history and the constitutional language adopted over the years show that the Governor is only authorized to appoint appellate judges when a vacancy causes an unexpired term.[16]
Furthermore, no reason has been put forward as to why the General Assembly did not, could not, or would not create and time the fulfillment of these new judgeships with a general election in compliance with Ga. Const, of 1983, Article VI, Section VII, Paragraph I. Over a hundred years ago, when the Georgia Court of Appeals was created in 1906, the initial three judgeships were filled by election. Ga. L. 1906, p. 24, § 3. Then, in 1916, when the legislature first expanded the number of seats on the Court of Appeals, it did so in a manner that allowed the seats to be filled by election. See Ga. L. 1916, p. 56, § 2.[17] I do not understand why the same cannot be done in 2016. At the time of my writing this dissent, a general election for nonpartisan positions, including judgeships, is scheduled to take place in May 2016. *904 Since the appellate judgeships at issue were created on May 6, 2015, the date when Governor Deal signed HB 279 into law, any potential candidates for these judgeships would have had ten months to file a notice of candidacy by March 11, 2016,[18] in time for the May 2016 election and those elected would be on track to take office by January 2017. The Court of Appeals has been managing its workload with twelve judges for just under two decades, and so there was no urgent need to fill these positions by gubernatorial appointment. As it now stands, the current appointees are not required to run for election until 2018 and will be in place for two years[19] without their stewardship having been sanctioned by the people of Georgia. This result is particularly egregious because “[t]he right to vote is fundamental, forming the bedrock of our democracy.” (Citations omitted.) Favorito v. Handel, 285 Ga. 795 (1) (a) (684 SE2d 257) (2009).
Decided April 26, 2016.
Wayne B. Kendall, for appellants.
Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Russell D. Willard, Senior Assistant Attorney General, Susan R. Haynes, Assistant Attorney General, for appellees.
While I cannot change the past, I can be vigilant in the present and sound the alarm for the future. I believe that the legislation allowing these gubernatorial appointments is unconstitutional and I believe the people of Georgia have been deprived of their constitutional right to elect the appellate judges who ultimately have the last say over their issues and disputes. As such, I respectfully decline to join today’s majority opinion.

 This quote is taken from the first dissent published in the first volume of the Georgia Reports.

 In Hooper v. Almand, Humphries was nominated to succeed himself in the Atlanta Judicial Circuit at the Democratic state convention on October 7,1942. Humphries died 15 days later on October 22,1942. The general election was to be held on November 3,1942. On October 24, two days after Humphries’ death, the Governor appointed Almand to fill the position, despite the fact that Hooper secured the most votes in the election days later.
This Court examined the issues of vacancy and the power of gubernatorial appointment and found that “vacancy” had no technical meaning. Hooper v. Almand, 196 Ga. at 59. Rather, this Court reasoned, “vacancy” applies not to the incumbent, but to the term or office, depending upon the context of a statute or constitutional provision in which the term is used. Id. The correct construction of “vacancy” is a vacancy in term given the subject matter and context of *901 the gubernatorial appointment provision; and, an unexpired term, in the minds of the framers, was the remaining portion of a definite, fixed term in which a vacancy had been occasioned by death, resignation, or some other cause. Id. at 59, 66.

 I note that our decision in Perdue v. Palmour, 278 Ga. 217 (600 SE2d 370) (2004), is not applicable to the case at bar because the judicial vacancy at issue in that case was created when the incumbent resigned, i.e., when the incumbency was interrupted. Consequently, there was no dispute that the Governor was authorized to appoint in that situation. Id. at 218. Therefore, the majority’s reliance on that case is misplaced.

 See Ga. L. 1960, p. 160 (expanding the Court of Appeals to a seventh judge).

 See Ga. L. 1961, p. 140 (expanding the Court of Appeals to an eighth judge and a ninth judge).

 The tenets of statutory construction likewise prohibit us from presuming that the legislature gave any implicit authority for Governor Vandiver to fill the judgeships by appointment. See Turner v. Georgia River Network, 297 Ga. 306, 308 (773 SE2d 706) (2015) *903 (“ ‘expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare taciturn (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)’ ”).

 See Ga. L. 1996, p. 405 (expanding the Court of Appeals to a tenth judge). It is worth noting that this 1996 legislation was the first time the General Assembly explicitly stated the Governor could appoint persons to fill the newly created judgeships.

 See Ga.L. 1999,p. 10 (expanding the Court ofAppeals to an eleventh judge and a twelfth judge).

 I express no opinion as to the expansion of the superior and state courts and the merits of filling those new positions by gubernatorial appointment.

 Judicial candidates were to participate in the November 1916 general election and the winner seated for a term beginning in January 1917. Ga. L. 1916, p. 56, § 2.

 See http://sos.ga.gov/index.php/elections/2016_eleotion_dates (AccessedMarch23,2016).

 The new judges’ appointments end December 31, 2018.